James E. PERKINS, Movant,

v.

TRAILCO MANUFACTURING AND
SALES CO., etc., Big Sandy Diesel Ser-
vice, and Bee Line Haulers, Inc., Re-
spondents.

Supreme Court of Kentucky.

April 14, 1981.

DeParcq, Anderson, Perl, Hunegs & Rudquist, Minneapolis, Minn., Frank H. Warnock, Warnock & Warnock, Greenup, for movant.

David O. Welch, Ashland, for respondent Trailco Mfg.

McKenzie, Wollery & Sewell, Ashland, for respondent Big Sandy Diesel Service.

H. Gene Baldridge, Rose & Baldridge, Ashland, for respondent Bee Line Haulers.

STERNBERG, Justice.

This is a products liability action. The issue of liability was tried to a jury. At the conclusion of all of movant's evidence, the trial judge granted respondents' motion for a directed verdict and dismissed movant's complaint, at his cost. The Court of Appeals of Kentucky affirmed the judgment of the trial court. This court granted review, and reverses.

The trial court was of the opinion that movant, James E. Perkins, had failed to show causation. In other words, the trial judge in effect held that Perkins had not established that his injuries were brought about by any defect or unreasonably dangerous condition of the dump trailer or hydraulic hoist assembly or a breach of any expressed or implied warranties, or that respondent, Trailco Manufacturing and Sales Co., was negligent in the design, test-ing, manufacturing, assemblying, sale or distribution of the trailer or the hydraulic hoist assembly. We need to consider the facts relating to causation as portrayed by the transcript of testimony.

Perkins, at the time of his injury, had for many years been engaged in the trucking business, especially dump truck hauling and dumping. He did his own maintenance, and at one time had fourteen drivers and three mechanics working for him. He decided to start hauling coal, sand, and gravel, and began shopping around for the proper dump trailer to use in conjunction with his GMC tractor. In the course of his shopping, several times he advised with William Rose, a salesman for the respondent, Big Sandy Diesel Service, relative to the GMC truck tractor that he owned as related to the best length of trailer to be purchased. The salesman suggested and recommended the purchase of a 28-foot trailer. On March 11, 1974, Perkins returned to Big Sandy Diesel Service, again conferred with Mr. Rose, and at his suggestion purchased the new trailer, the one involved in this action. It was manufactured by Trailco and distributed by respondent Bee Line Haulers, Inc.

On the day of the purchase Perkins and a mechanic from Big Sandy Diesel Service, at about 1:00 p. m., connected the GMC tractor to the trailer, and Perkins removed it to an unguarded lot where he then tested the hydraulic hoist assembly by running all of its five sections up and down two times. No improper action of the hydraulic hoist assembly was observed. In the course of his work Perkins visited the lot each day from the time it was parked until he used it on March 27, 1974. On that date he connected his GMC tractor to the subject trailer for its first haul, and again Perkins tested the hydraulic hoist assembly by raising it a few feet to release some rain water that had accumulated in the bed of the trailer. Perkins then drove it to the slag yard where, following proper loading procedures, he was loaded with 43,000 pounds of slag. He drove a distance of about one mile to the General Concrete Co. without encountering any problem with the way the equip-

ment drove or handled. Perkins, assisted by Cecil Conley, manager of General Concrete Co., placed the tractor and trailer in proper position for the trailer to be raised so as to dump the load. He and Conley checked the tires. Perkins opened the tailgate, got back into the tractor, put the power takeoff in gear, shut the valve on the pump, and started raising the trailer. The first two joints (about six feet) went up without any difficulty. As the third joint of the hydraulic system moved out it made a popping noise. There was an unusual sound coming from the engine of the tractor, and the whole trailer and load crashed to the ground. The tractor and trailer fell on their sides in a bad twist, spilling the load.

Frederick Saphra, an engineer, was called by Perkins as an expert witness in an effort to establish causation. The efficacy and quality of his testimony in that respect were heatedly debated. The trial judge, after giving consideration to the substance of Saphra's testimony and the quality of Perkins' other evidence, stated that Perkins had failed to prove a case. In view of the disposition that is being made of this case, we do not find it necessary to consider the testimony of Saphra in determining the propriety of the action of the trial judge in dismissing Perkins' law suit.

Perkins raises four issues relating directly to the sufficiency of the evidence to establish liability on the part of the respondents. There is a common question drawn through each of these issues which, when answered, disposes of all four of them. The question presented is whether, under the facts of this case, it would be unreasonable for a jury to find that the accident was caused by a defect in the trailer, design or otherwise.

The trial judge said, "* * * If you were to ask any of the jurors out there what caused this particular dump trailer to turn over, I don't think you could find one person out there that would give you any answer whatsoever." The trial judge used the wrong criterion. The proper inquiry is whether it would be unreasonable under the facts for a jury to find that the defects complained of were a substantial factor in the cause of the accident.

■ First of all, we need to determine whether this action can properly be characterized as one of strict liability. We find that it can. Restatement of Torts 2d, Sec. 402A; *Ulrich v. Kasco Abrasives Company*, Ky., 532 S.W.2d 197 (1976).

Next, we turn our attention to the issue of whether the testimony, when considered under the theory of strict liability, is sufficient to withstand a motion to dismiss.

The evidence upon which Perkins must rest his case is purely circumstantial. In *Lee v. Tucker*, Ky., 365 S.W.2d 849 (1963), we said, "Circumstantial evidence has no magic quality. It is measured by the same standards of probity and credibility as direct evidence." In *Ulrich v. Kasco Abrasives Company*, supra, we stated:

"* * * a theory of strict liability for manufacturers of mechanical products ought to be rather simple. The product either is or is not unreasonably dangerous to a person who should be expected to use or be exposed to it. If it is, it can make no difference whether it is dangerous by design or by accident."

In *Holbrook v. Rose*, Ky., 458 S.W.2d 155 (1970), we said:

"Generally, the existence of a defect in the product itself may be established by a sufficient quantum of circumstantial evidence. Proof of legal causation is required in cases involving liability for products including drugs; again in this instance, legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm."

■ The sufficiency of circumstantial evidence to overcome a motion for a directed verdict was discussed in *Holbrook*, supra. Therein we said, "* * * the essence of the test concerning the sufficiency of plaintiff's circumstantial evidence concerning causation is that the proof must be sufficient to tilt the balance from 'possibility' to 'probability.'" In other words, the burden of

proof was upon Perkins to show that the circumstances surrounding the accident were such as to justify a reasonable inference of probability rather than a mere possibility that respondents were responsible.

The trailer was new. Its maiden voyage over a short distance of about one mile, carrying a proper load and being used in a proper manner, ended disastrously to it and the tractor that pulled it. There was an absence of direct proof of a specific defect. Perkins did however negate other possible causes for the failure of the trailer to function properly.

In the subject action the evidence, although circumstantial, is of such quality that it might be reasonably inferred that the accident was caused by a defect in the trailer. Having shown this, there was sufficient evidence of causation to require the issue to be submitted to a jury.

Perkins also raises an issue as to the propriety of the trial judge in denying his motions to require Trailco Manufacturing to produce certain specified documents for copying pursuant to CR 30.02, 34.01 and 37.02. On three separate occasions Perkins filed such a motion, each of which was denied without the cause therefor being shown. The granting or denying of such a motion is discretionary with the trial court, and its action will not be disturbed unless clearly erroneous. In view of the showing which Perkins made, it was error for the trial court to deny his motion for the production of documents. His motion for the production and examination of documents should have been granted.

The decision of the Court of Appeals and the judgment of the Boyd Circuit Court are reversed. This case is remanded to the Boyd Circuit Court for a new trial consistent with this opinion.

All concur.