Scott GENTRY, Linda Gentry, and Meridian Insurance Company, Appellants,

v.

GENERAL MOTORS CORPORATION and Montgomery Chevrolet, Appellees.

No. 91–CA–2143–MR.

Court of Appeals of Kentucky.

Oct. 30, 1992.

Kenneth H. Baker, Margaret F. Timmel, Louisville, for appellants.

Mary Jo Wetzel, Linsey W. West, Woodward, Hobson & Fulton, Louisville, for appellees.

Before EMBERTON, HOWERTON and JOHNSON, JJ.

HOWERTON, Judge.

Scott Gentry, Linda Gentry, and Meridian Insurance Company appeal from an order nunc pro tunc dismissing their products liability action. They argue that the trial judge abused his discretion by excluding the testimony of their expert witnesses. We agree and reverse. The error occurred prior to a retrial following a previous appeal. The Gentrys also argue that admissibility of their experts' testimony is the law of this case. We need not address that issue.

The events out of which this case arose occurred in December of 1984, when 17–year–old Scott Gentry ran into a tree on Fisher Lane in Bullitt County while driving his mother's 1983 Camaro. An action was then brought by Scott and his mother, Linda, against General Motors Corporation (GM) and Montgomery Chevrolet, based upon negligence, breach of warranty, and strict liability.

The evidence showed that on the night of the accident, Scott was driving about 30 miles per hour when he heard a noise in the left rear end of the car. The vehicle suddenly began pulling to the left despite Scott's efforts to keep it straight on the road. The vehicle struck a tree. The left wheel and tire were found separated from the vehicle after the accident. Linda Gentry testified that she had returned the Camaro to Montgomery Chevrolet on at least three occasions before the accident complaining of a "noise or rattle in the rear end of the car." The last time she took the car in was in June of 1984—six months before the accident.

During the first trial, expert testimony was presented by a metallurgist, Dr. Alan Johnson, and by an accident reconstructionist, Phillip Shaad. Johnson testified that he believed a "hot tear" was formed in the casting process at the GM plant and that this caused a crack to develop in the differential housing prior to the collision. He further testified that based on his expertise and the evidence he gathered through inspection of the vehicle, it was his opinion that the crack was present at the time of manufacture and increased over time, causing a complete failure of the left rear axle assembly on December 14, 1984. Shaad testified that "weakness in this joint that we have discussed led to an instability of the rear axle, which adversely affected the vehicle's handling characteristics and contributed to the accident."

At the first trial of the case, the Gentrys attempted to prove by this expert testimony that the accident occurred as the result of a manufacturing defect. The trial judge, however, was apparently of the opinion that the expert testimony was insufficient to establish a dangerously defective condition at the time of manufacture and granted GM's motion for a directed verdict at the conclusion of the Gentrys' evidence.

The judgment was appealed to this Court, which reversed and granted the Gentrys a new trial. Immediately prior to the second trial, the trial judge granted

GM's motion in limine objecting to the qualifications of the Gentrys' expert witnesses. The Gentrys' claim was ultimately dismissed pursuant to an order from which this appeal is taken.

■ The Gentrys raise two arguments on appeal. First, they contend that the trial judge abused his discretion in excluding the testimony of their expert witnesses. We believe this complaint is well-taken. We are cognizant of the rule in Kentucky and most jurisdictions that it is within the discretion of the trial judge to decide as to the qualifications of expert witnesses and that this ruling is seldom disturbed on appeal. *Lee v. Butler*, Ky.App., 605 S.W.2d 20 (1979). In *Kentucky Power Co. v. Kilbourn*, Ky., 307 S.W.2d 9, 12 (1957), our highest Court noted:

> While it is clear that a witness in order to be competent as an expert must show himself to be skilled in the business or profession to which the subject about which he is called to testify relates, there is no precise rule as to the mode in which such skill or experience must be acquired. A witness may become qualified by practice or an acquaintance with the subject. He may possess the requisite skill by reason of actual experience or long observation.

■ In the present case, the evidence showed that the witness, Johnson, was a professor of metallurgy at the University of Louisville. He was shown to have a Bachelor's Degree from the University of Redding in England, a Master's Degree in the physics of metals from the University of Toronto in Canada, and a Ph.D. in the same field from London University in England. Johnson stated that he had been a tenured full professor for nearly 25 years and had published approximately 100 research papers, most of them dealing with deformation and fracture of metals. He also testified that he had been elected a Fellow in the American Society for Metals, a Fellow at the Institute of Metals in London, and a Fellow of the Institute of Physics in London. He stated that he had lectured widely on both sides of the Atlantic.

The Gentrys called Dr. Johnson to establish the fact of a defect in the axle of the Camaro. He testified that the "teardrop configuration on this bull's eye [on the axle], is evidence that there was an open crack in the casting at the time that the welds were made, right in the General Motor's plant. . . . [T]he differential housing was cracked when the vehicle was assembled in the General Motor's Plant." Johnson went on to explain how, in his opinion, the crack was probably caused by a hot tear that formed during the casting of the component.

■ Phillip Shaad, the accident reconstruction expert, testified that he held a Bachelor's Degree from the University of Louisville and that he had done post-graduate work there. He is certified by the National Institute of Automotive Service Excellence as a master automobile technician, a master heavy duty truck technician, and as a body technician. He has been employed in various capacities in the automotive industry. From 1974 to 1977, he was employed by GM, serving part of that time as an instructor in mechanics. He later served in GM's Customer Relations Department where he investigated and supervised investigation of accidents involving possible products liability. Shaad further testified that he had attended three courses in accident reconstruction in Florida and has worked with the Jefferson County Coroner and medical examiner offices to determine the causes of accidents. He is presently under contract with the Commonwealth of Kentucky to provide mechanical expertise and accident reconstruction expertise to any prosecutors in the state. Shaad stated that he has testified in ten courts in the state as an expert witness. He also testified that he had investigated over 150 traffic accidents with an eye toward reconstructing the accident and rendering an opinion as to the cause of the accident. Of those 150 accidents, Shaad noted that quite a few involved axle fractures, and some involved vehicles with the same design as the Gentrys' Camaro.

Shaad testified that various chatter and scuff marks tended to indicate that the wheel on the Camaro "was wobbling around and probably did contact the fender before the car even left the road and hit the tree." He further opined that the left

**579**

tire hit the left wheel well because, although the joint had failed prior to impact with the tree, the assembly had not completely come apart. The axle shaft no longer fit tightly and was free to wobble, and "that's what caused the accident."

In his Opinion and Order excluding the testimony of Johnson and Shaad, the trial judge stated that neither possessed the qualifications to testify in the area in which they sought to express an opinion. However, both men have shown themselves to be skilled in their professions, both have testified in numerous courts in Kentucky, and both have testified in cases involving accidents similar to the one in issue here. We conclude that the trial judge abused his discretion in refusing to admit the expert testimony of Johnson and Shaad.

■ The judge also concluded that the opinions of the two experts constituted no more than speculation. However, there was testimony from these experts that the defect caused or contributed to the accident, and the testimony was couched in terms of probability. *Seaton v. Rosenberg*, Ky., 573 S.W.2d 333 (1978). There was a sufficient quantum of circumstantial evidence to justify a reasonable inference of probability that GM was responsible for a defect that caused the accident. *Perkins v. Trailco Mfg. and Sales Co.*, Ky., 613 S.W.2d 855 (1981). The testimony of these experts may be given what weight the jury believes it deserves. *Clark's Adm'r v. Ky. Utilities Co.*, 289 Ky. 225, 158 S.W.2d 134 (1941).

The Gentrys raise as their second assignment of error the failure of the trial court to find itself constrained by the law of the case to admit the expert testimony offered by Johnson and Shaad. We decline to reach that issue because of our decision as to the first assignment of error.

The judgment of the Bullitt Circuit Court is reversed and remanded for a new trial consistent with this opinion.

All concur.